J-S29018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.I.T.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.W., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3594 EDA 2017 |

Appeal from the Decree September 28, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000502-2017,
FID: 51-FN-000654-2016

BEFORE:   PANELLA, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 04, 2018**

D.W. (Father) appeals from the decree which involuntarily terminated his parental rights to his minor son, K.I.T.W. (Child), born in December 2013.[1] For the reasons that follow, we affirm.

The trial court summarized the factual and procedural history of this case as follows:

> S.C.S., is the "Mother" of K.M-A., L.M-A. and [(Child) (collectively, Children)].
>
> D.I.W. is the "Father" of [Child], and is listed as the [f]ather on the Child's birth certificate.
>
> On March 23, 2016, the Department of Human Services (DHS) received a General Protective Services (GPS) Report alleging that

---

[1] The September 28, 2017 termination decree also terminated the parental rights of S.C.S. (Mother).  Mother did not appeal that determination, nor is she a party to this appeal.

---

\*   Former Justice specially assigned to the Superior Court.

[Child] was found inside the home alone; that Community Umbrella Agency (CUA) Turning Points for Children (TPFC) attempted to contact the Mother, S.C.S., and Maternal Great Uncle, B.W.; that B.W. answered the telephone and stated that he had left the home and that Mother was with [Child]; that the police were contacted and an officer observed [Child] in the home alone; and that B.W., arrived at the home after the police. The [r]eport further alleged that an [Order of Protective Custody (OPC)] was requested to place [Child]. This Report was substantiated.

On March 23, 2016, DHS received a supplemental report alleging that the police were called after [Child] was found at home alone, and he tried to open the door of the home and was calling for his Mother. The report further alleged that Maternal Great Uncle, B.W., arrived before the police and stated that he believed Mother was in the home with the Child. B.W. stated he did not see Mother in the home and that he heard her on the telephone. The report alleged that B.W. left the home at approximately 11:35 a.m. on 3/23/2016, and returned at 12:05 p.m. on 3/23/2016; and that [Child] was unsupervised for approximately 30 minutes. The report further alleged that the front door was barricaded on the inside, and that Mother may have barricaded the door to prevent the Child from opening the door. [Child's] Maternal Aunt, T.N., who was listed on the Safety Plan as the responsible party, was contacted and she stated that she was in New York.

On March 23, 2016, DHS went to the home of Mother. When DHS approached the home, Mother arrived and asked why DHS was there. DHS informed Mother about the GPS Report. DHS entered the home and observed the Agency Representative of TPFC and B.W. with the Child. B.W. stated that he did not know that Mother was not in the home when he left. B.W. further stated that he takes medication which can make him drowsy. DHS explained to Mother that DHS would plan for [Child's] placement. Mother became irate and stated she would not allow DHS to remove [Child] from the home. DHS and TPFC Representative stepped outside of the home to call for police assistance and when the police arrived, Mother closed the front door and would not allow DHS to enter the home again. When they got inside the home, it was discovered that Mother had left through the back door with the Child. DHS left the home and waited for the police to locate Mother. The police subsequently contacted DHS and stated that Mother was at a police station with the Child and that [Child] was safe. DHS went to the police station and retrieved the Child.

On March 23, 2016, DHS obtained an OPC for [Child] and placed him in Foster Care through Progressive Life.

A Shelter Care Hearing was held on March 25, 2016 for the Child before Juvenile Court Hearing Officer, Theodore Vigilante. The Court OPC was lifted, [with] temporary legal custody to remain with DHS, and placement of Child to remain in Foster Care through Progressive Life. DHS to explore Paternal Grandfather as a placement resource and conduct all appropriate clearances. Child may be moved prior to the next court date.

An Adjudicatory Hearing was held for the Child on April 4, 2016, before the Honorable Allan L. Tereshko. Legal Custody of the Child to transfer to the Guardian, Paternal Grandfather, G.J., and physical custody of the Child shall also transfer to Guardian Paternal Grandfather, G.J. Child to continue to receive speech therapy through Child Link. CUA to provide clothing voucher to foster mom. CUA to explore prison visits with the Father, and to create a visitation schedule between Father and Child if appropriate.

Trial Court Opinion, 1/11/18, at 3-5 (internal citations omitted).

On May 3, 2017, DHS filed a petition to terminate Father's parental rights to Child. The trial court conducted a hearing on the petition on September 28, 2017. At the conclusion of the hearing, the trial court delivered its decision from the bench, ordering that Father's parental rights to Child be terminated. It entered the written order on the same date. On October 30, 2017, Father timely filed his notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and

(b).[2]  The trial court issued its opinion pursuant to Pa.R.A.P. 1925(a) on January 11, 2018.

On appeal, Father raises the following issue:

I. WHETHER THE TRIAL COURT ERRED IN TERMINATING FATHER, [D.W.'S], PARENTAL RIGHTS WHERE FATHER WAS NOT PERSONALLY SERVED WITH NOTICE OF THE HEARING TERMINATING HIS PARENTAL RIGHTS?

Father's Brief at 2.

We review an appeal from the termination of parental rights in accordance with the following standard:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

_____

[2] Generally, a party must file his or her notice of appeal within 30 days after the entry of the order being appealed.  Pa.R.A.P. 903(a).  Here, 30 days after September 28, 2017 was October 28, 2017.  Because October 28, 2017 was a Saturday, Father timely filed his notice of appeal on Monday, October 30, 2017.  *See* 1 Pa.C.S. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday . . . such day shall be omitted from the computation.").

Father's sole issue is whether he was properly served with notice of the hearing to terminate his parental rights. Initially, we note Father does not argue that he did not receive notice of the termination proceeding. Father's Brief at 6-7. Instead, Father generally asserts that DHS's notice via certified mail was insufficient because Father did not personally sign for the delivery. In essence, Father asks this Court to interpret the notice provisions as they relate to involuntary termination matters, to require restricted delivery.[3]

The Adoption Act governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S.A. §§ 2101-2938. Section 2513(b) of the Act provides as follows:

> **(b) Notice.—**At least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated, by personal service **or by registered mail** to his or their last known address or by such other means as the court may require. A copy of the notice shall be given in the same manner to the other parent, putative father or parent or guardian of a minor parent whose rights are to be terminated. A putative father shall include one who has filed a claim of paternity as provided in section 5103 (relating to acknowledgment and claim of paternity) prior to the institution of proceedings. The notice shall state the following:
>
> "A petition has been filed asking the court to put an end to all rights you have to your child (insert name of child). The court has set a hearing to consider ending your rights to your child. That hearing will be held in (insert place, giving reference to exact room and building number or designation) on (insert date) at (insert time). You are warned that even if you fail to appear at the

---

[3] Restricted delivery is mail "delivered only to the addressee or the person [ ] specifically authorize[d] in writing to receive [the] restricted delivery mail." ***Dwyer v. Luzerne County Tax Claim Bureau***, 110 A.3d 223, 226 (Pa. Cmwlth. 2015).

scheduled hearing, the hearing will go on without you and your rights to your child may be ended by the court without your being present. You have a right to be represented at the hearing by a lawyer. You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.

(Name)

(Address)

(Telephone number)"

23 Pa.C.S.A. § 2513(b) (emphasis added).

Likewise, our Orphans' Court Rules provide the following guidance, in relevant part:

(a) Notice to every person to be notified shall be by personal service, service at his or her residence on an adult member of the household, **or by registered or certified mail** to his or her last known address. If such service is unobtainable and the registered mail is returned undelivered, then:

* * *

(2) in [involuntarily termination and adoption proceedings], further notice by publication or otherwise shall be given if required by general rule or special order of the local Orphans' Court. If, after reasonable investigation, the identity of a person to be notified is unknown, notice to him or her shall not be required.

Pa.R.O.C. 15.6(a)(2) (emphasis added). As in all civil cases, the petitioner – in this case DHS – bears the burden of proving proper service by its affirmative acts. *Leight v. Lefkowitz*, 615 A.2d 751, 753 (Pa. Super. 1992).

Appellee, DHS, argues that Father's issue is waived because it differs significantly from the issues raised in his Rule 1925(b) statement. We agree. *See Dietrich v. Dietrich*, 923 A.2d 461, 463 (Pa. Super. 2007) (stating that

when an appellant files a Rule 1925(b) statement, any issues not raised in that statement are waived on appeal). Accordingly, we are constrained to conclude that Father has waived all issues on appeal.

However, even had Father not waived this claim, the record confirms that he received adequate notice of the hearing. At the beginning of the September 28, 2017 termination hearing, DHS addressed the service and notice on Father as follows:

> Just regarding the service and notice on [Father], the father of [Child], he is currently incarcerated at PIC. And he was sent notice by certified mail of this hearing as well as the petitions . . . . And that was effectually delivered at the prison on June 10, 2017.

N.T., 9/28/17, at 10-11. The record also includes a copy of the subpoena sent to Father, a certified mail tracking receipt, and USPS tracking results that indicate service was effectuated on June 10, 2017. *See* DHS Ex. 3. Such service complied with the requirements of both Section 2513(b) of the Adoption Act and Pennsylvania Rule of Orphans' Court 15.6(a), giving Father sufficient notice of the termination hearing. For these reasons, we conclude that Father's issue does not merit relief. Therefore, we affirm the decree involuntarily terminating Father's parental rights to Child.

Decree affirmed.

Judge Panella joins the memorandum.

P.J.E. Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/4/18